**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| INTELLISOFT, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>CHRISTOPHER L. ESTEP<br>(a/k/a CHRIS STONE),<br><br>                    Defendant. | Case No:<br><br><br>**COMPLAINT**<br>**(Jury Trial)** |

Intellisoft, Inc. ("Intellisoft"), complaining of Christopher L. Estep ("Estep"), alleges the following:

### THE PARTIES

1.    Intellisoft, Inc. is a South Carolina corporation existing under the laws of the State of South Carolina, having a principal place of business in Mauldin, SC.

2.    Defendant Estep is a South Carolina resident having an address of 4340 Anderson Mill Road, Moore, SC 29369.

3.    Upon information and belief, Defendant Estep uses the alias Chris Stone for certain transactions such as paying for lodging either personally or improperly on the behalf of Intellisoft.

### JURISDICTION

4.    This action arises under the United State Copyright Act pursuant to 17 U.S.C. §§ 101, *et seq*.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1338.

5.    The state and common law causes of action are properly before this Court pursuant to 28 U.S.C. §§ 1338 and 1367.

GREENVILLE 316987v3

6.    Venue is proper under 28 U.S.C. § 1391(b), as the Defendant Estep reside in this District and Division; and the acts committed by Estep that serve as the grounds for this complaint occurred in this District and Division.

7.    The parties entered into an agreement wherein Intellisoft is entitled to seek temporary, preliminary injunctive relief without the necessity of proving actual damages or posting any or other security.

## FACTS COMMON TO ALL CAUSES OF ACTION

8.    The parties entered into an Employment Agreement having a term starting August 1, 2010.  (Exhibit A).

9.    The agreement was executed in October of 2010.

10.    Under this agreement, Estep also agreed to the Assignment Of Rights, Non-Disclosure, Non-Solicitation And Non-Competition Agreement (Exhibit B).

11.    Under the Employment Agreement, Employee [Estep] will be reimbursed for all reasonable, out-of-pocket business expenses incurred in the performance of Employee's duties on behalf of Company.

12.    Estep was appointed responsibility for financial matters and provided the title, Chief Financial Officer.

13.    Estep was responsible for the finances of Intellisoft including tax filings.

14.    Estep had the ability to receive and reimburse his own reimbursement requests.

15.    On or about March of 2013, Intellisoft, discovered that there were several suspicious transactions involving reimbursement to Estep.

16.    Upon investigation after this March 2013 discovery, Intellisoft found that by using his authority to control the financial matters of Intellisoft, Estep submitted, approved and reimbursed

himself for multiple transactions that were of a personal nature, non-business expenses and unrelated to the business of Intellisoft.

17.  On or about August 8, 2013, Estep resigned his position as an officer and director of Intellisoft, positions originally granted to him under the Employment Agreement (Exhibit C).

18.  On or about August 8, 2013, Estep acknowledged in writing that he was and would continue to operate as an employee.

19.  On or about August 8, 2013, the Intellisoft accepted the resignation of Estep in a written consent of the shareholders (Exhibit D).

20.  On or about August 8, 2013, Estep agreed in writing to elect David Peeples to the Board of Directors.

**Unauthorized Transaction**
**(Foreign Paramour)**

21.  Upon information and belief, Estep has breached his fiduciary and contractual obligations to Intellisoft by authorizing and receiving reimbursement from Intellisoft for travel expenses to the Ukraine seeking a foreign national paramour.

22.  Aerosvit Airlines airfare in the amount of $586.00 was purchased by Estep on or about 3/27/2010 and reimbursed by Intellisoft under Estep's authorization.

23.  The Aerosvit Airlines airfare charges were personal in nature and improperly charged to Intellisoft by Estep and related to his paramour.

24.  Upon information and belief, Estep has breached his fiduciary and contractual obligations to Intellisoft by authorizing and receiving reimbursement from Intellisoft for legal fees in relation to bringing his foreign national paramour to the United States.

25.  The amount of $1,795.00 in legal fees were paid by Estep to Lawrence R. Holmes on August 17, 2010.

26.  Lawrence R. Holmes is an attorney with an address of 1940 Garnet Ave, Suite 210, San Diego, California 92109, who among other legal services, provides K1 fiancé visas for its clients.

27.  The K1 fiancé visa is for an individual who is engaged to a fiancé who is residing in a foreign country and wants to marry the fiancé in the United States.

28.  These legal fees to Lawrence R. Holmes were reimbursed by Intellisoft to Estep under Estep's own authorization.

29.  The legal fees to Lawrence R. Holmes were personal in nature and improperly charged to Intellisoft by Estep.

30.  Upon information and belief, Estep has breached his fiduciary and contractual obligations to Intellisoft by authorizing and receiving reimbursement from Intellisoft for jewelry given by Estep to his foreign national paramour.

31.  Helzberg Diamonds is a jewelry store in no way related to the business of Intellisoft.

32.  Estep was reimbursed by Intellisoft for charges to Helzberg Diamonds in the amount of $953.97.

33.  Estep was reimbursed by Intellisoft for charges to Helzberg Diamonds in the amount of $2,088.36.

34.  The charges to Helzberg Diamonds were personal nature and improperly charged to Intellisoft by Estep.

35.  Upon information and belief, Estep breached his fiduciary and contractual obligations to Intellisoft by authorizing and receiving reimbursement from Intellisoft for purchases from Victoria Secret which were given to his foreign national paramour.

36.  Victoria's Secret is a retailer of women's clothing and lingerie and in no way related to the business of Intellisoft.

37. Estep was reimbursed by Intellisoft for charges to Victoria's Secret in the amount of $342.37.

38. The charges to Victoria Secret were personal in nature and improperly charged to Intellisoft be Estep.

**Unauthorized Transactions**
**(Firearms, Weapons, and Firearms and Weapons Accessories)**

39. Upon information and belief, Estep breached his fiduciary and contractual obligations to Intellisoft by authorizing and receiving reimbursement from Intellisoft for firearms, weapons, and firearms and weapons accessories intended for Estep's personal use.

40. Upon information and belief, Intellisoft paid $1,184.47 for Estep's personal charges to Dillon Precision Products.

41. Dillon Precision Products is a manufacturer of ammunition loading and reloading supplies and unrelated to the business of Intellisoft.

42. Allen Arms is a firearm range in Greenville, South Carolina and in no way related to the business of Intellisoft.

43. Under Estep's authorization, Intellisoft paid to Allen Arms the amount of $3,255.65 for Estep's personal charges.

44. DS Arms is a firearm and weapons manufacturer and in no way related to the business of Intellisoft.

45. Under Estep's authorization, Intellisoft paid to DS Arms the amount of $213.91 for Estep's personal charges.

46. Larue Tactical is a firearm manufacturer and in no way related to the business of Intellisoft.

47.  Under Estep's authorization, Intellisoft paid to Larue Tactical the amount of $715.90 for Estep's personal charges.

48.  Lee Precision is a manufacturer of ammunition reloading equipment and in no way related to the business of Intellisoft.

49.  Under Estep's authorization, Intellisoft paid to Lee Precision the amount of $707.82 for Estep's personal charges.

50.  Midway USA is a retailer of firearms, ammunition, and survival goods and in no related to the business of Intellisoft.

51.  Under Estep's authorization, Intellisoft paid to Midway USA the amount of $7,068.71 for Estep's personal charges.

52.  Sig Sauer is a manufacturer of firearms and in no related to the business of Intellisoft.

53.  Under Estep's authorization, Intellisoft to Sig Sauer the amount of $111.00 for Estep's personal charges.

54.  Surefire is a manufacturer of firearms and weapon accessories and in no way related to the business of Intellisoft.

55.  Under Estep's authorization, Intellisoft paid to Surefire the amount of $992.06 for Estep's personal charges.

56.  US Armament is a retailer of firearms and weapon accessories and in no way related to the business if Intellisoft.

57.  Under Estep's authorization, Intellisoft paid to US Armament the amount of $1,156.11 for Estep's personal charges.

58.  Natchez Shooter Supplies is retailer of firearm and weapon accessories and supplies and in no way related to the business of Intellisoft.

GREENVILLE 316987v3

59.  Under Estep's authorization, Intellisoft paid to Natchez Shooter Supplies the amount of $$667.79 for Estep's personal charges.

60.  The charges for firearms, weapons, and firearms and weapons accessories were personal in nature and improperly charged to Intellisoft by Estep.  Intellisoft is entitled to reimbursement for these improper charges.

### Unauthorized Transactions
### (Personal and Non-Business)

61.  Under Estep's authorization, Intellisoft paid B&H Photo $8,859.16.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

62.  Under Estep's authorization, Intellisoft paid ATM Transactions $13,429.45.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

63.  Under Estep's authorization, Intellisoft paid Euro Optic $3,205.34.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

64.  Under Estep's authorization, Intellisoft paid Spartanburg Photo Center $3,000.00.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

65.  Under Estep's authorization, Intellisoft paid Charlie's Used Cars of Spartanburg $3,000.00.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

66.  Under Estep's authorization, Intellisoft paid Jos. A. Bank $1,847.34.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

67. Under Estep's authorization, Intellisoft paid Academy Sports $1,550.12.    This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

68. Under Estep's authorization, Intellisoft paid B&H photo $14,907.83.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

69. Under Estep's authorization, Intellisoft paid Backcountry.com $893.16.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

70. Under Estep's authorization, Intellisoft paid Belk $1,443.47.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

71. Under Estep's authorization, Intellisoft paid Best Western Greenville $158.22. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

72. Under Estep's authorization, Intellisoft paid BI-LO $182.11.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

73. Under Estep's authorization, Intellisoft paid The Biltmore $298.00.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

74. Under Estep's authorization, Intellisoft paid Body Central $280.83.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

GREENVILLE 316987v3

75. Under Estep's authorization, Intellisoft paid Bradshaw Infinity $2,946.48. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

76. Under Estep's authorization, Intellisoft paid Case Club $540.21. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

77. Under Estep's authorization, Intellisoft paid Clarion Inn Greenville $75.90. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

78. Under Estep's authorization, Intellisoft paid Comfort Suites $2,419.32. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

79. Under Estep's authorization, Intellisoft paid Country Inn & Suites in West Virginia under the name of Chris Stone $89.60. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

80. Under Estep's authorization, Intellisoft paid Courtyard Spartanburg $622.55. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

81. Under Estep's authorization, Intellisoft paid Dillard's $2,089.21. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

82. Under Estep's authorization, Intellisoft paid Dover Saddlery $3,146.16. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

GREENVILLE 316987v3

83.  Under Estep's authorization, Intellisoft paid Fowler Brother Dry Cleaning $940.13. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

84.  Under Estep's authorization, Intellisoft paid Hampton Inn Greenville $550.12.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

85.  Under Estep's authorization, Intellisoft paid Hickory Point of Spartanburg $858.41. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

86.  Under Estep's authorization, Intellisoft paid Holiday Inn Express of Spartanburg $988.84.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

87.  Under Estep's authorization, Intellisoft paid Horus Vision $643.18.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

88.  Under Estep's authorization, Intellisoft paid Hyatt Suites Greenville $130.90.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

89.  Under Estep's authorization, Intellisoft paid Ingles $911.69.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

90.  Under Estep's authorization, Intellisoft paid Jos. A Bank $3,649.11.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

GREENVILLE 316987v3

91.  Under Estep's authorization, Intellisoft paid Logo Bee $499.00.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

92.  Under Estep's authorization, Intellisoft paid Marathon Spartanburg $583.62.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

93.  Under Estep's authorization, Intellisoft paid Marriott in Spartanburg $304.29.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

94.  Under Estep's authorization, Intellisoft paid Perth Web Design $3,425.70.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

95.  Under Estep's authorization, Intellisoft paid Marriott in Spartanburg $304.29.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

96.  Under Estep's authorization, Intellisoft paid Pet Smart $1,012.25.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

97.  Under Estep's authorization, Intellisoft paid Publix $5,180.60.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

98.  Under Estep's authorization, Intellisoft paid REI $1,912.25.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

99.  Under Estep's authorization, Intellisoft paid Reidville Road Animal Hospital $2,129.84.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

GREENVILLE 316987v3

100. Under Estep's authorization, Intellisoft paid Residence Inn in Greenville and Asheville $902.39. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

101. Under Estep's authorization, Intellisoft paid Residence Inn Miami $202.66. This transaction that was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

102. Under Estep's authorization, Intellisoft paid Rite Aid in Spartanburg $1,103.76. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

103. Under Estep's authorization, Intellisoft paid Spalding Fly Predator $129.50. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

104. Under Estep's authorization, Intellisoft paid Spinx $600.14. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

105. Under Estep's authorization, Intellisoft paid St. Croix Shop $3,641.00. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

106. Under Estep's authorization, Intellisoft paid Sunoco $1,784.49. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

107. Under Estep's authorization, Intellisoft paid T Mobile $1,277.55. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

GREENVILLE 316987v3

108. Under Estep's authorization, Intellisoft paid The Farm House (Landrum) $1,630.76. This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

109. Under Estep's authorization, Intellisoft paid Unbeatable Sale $1,108.93.   This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

110. Under Estep's authorization, Intellisoft paid US Cavalry $2,285.72.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

111. Under Estep's authorization, Intellisoft paid Verizon Pre-paid $1,200.00    This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

112. Under Estep's authorization, Intellisoft paid Vonage $3,000.99.  This transaction was a personal transaction for Estep and improperly approved by Estep for payment by Intellisoft.

113. Under Estep's authorization, Intellisoft paid Other non-Business Charges in the amount of $20,917.22.  These transactions were personal transactions for Estep and improperly approved by Estep for payment by Intellisoft.

114. Under Estep's authorization, Intellisoft reimbursed Estep $93,355.22 for undocumented transactions that were charged to an American Express charge card.  These transactions were personal transactions for Estep and improperly approved by Estep for payment by Intellisoft.

115. Under Estep's authorization, Intellisoft reimbursed Estep $15,598.48 for undocumented transactions that were charged to a Barcley account.   These transactions were personal transactions for Estep and improperly approved by Estep for payment by Intellisoft.

116. As a result of Estep's improper actions, Estep owes Intellisoft an amount in excess of $340,000 for personal charges.

### Failure to Return or Provide Access to Intellisoft Property
### (Improperly Disabling sc.ccccd.net)

117. In the course of his performance, Estep is provided access and in possession of property rightfully belonging to Intellisoft.

118. In the course of his performance, Estep created property rightfully belonging to Intellisoft including domain names, software and source code.

119. Intellisoft provides its services and software to the South Carolina Center for Child Care Career Development that maintain a website under www.sc-ccccd.net.

120. The domain name was registered, not in the name of the South Carolina Center for Child Care Career Development, but in the name of Chris Estep, by Estep.

121. Estep, without authorization or authority, disabled the URL and website in an attempt to create leverage over Intellisoft.

122. The South Carolina Center for Child Care Career Development includes over 30,000 active users in its database.

123. One of the purposes of the South Carolina Center for Child Care Career Development website is to allow child care providers to prove that the provider is in compliance with the Department of Social Services ("DSS") and that the proper training courses required by DSS have been taken.

124. In the event that a DSS licensed monitor shows up at a child care facility to verify that they meet all of the requirements for the State of South Carolina, the South Carolina Center for Child Care Career Development website is used to produce transcripts to provide to that monitor.

Without access to the South Carolina Center for Child Care Career Development website, potential non-compliance issues are created for the monitor and the child care facility.

125. Estep, without authorization, improperly disabled access to the South Carolina Center for Child Care Career Development website causing over 100 individuals to call and complain.

126. In a conversation between Estep and David Peeples, Estep stated that he disabled the domain name in reaction to the current dispute.

127. In a conversation between Estep and David Peeples, Estep stated that he would not release the domain name unless he was given an equitable portion of Intellisoft.

128. In a conversation between Estep and David Peeples, Estep stated that the domain name was his personal property and that he would not release the domain name unless he was paid for it.

129. Estep intentionally has maintained the registration in his personal name in an improper attempt to highjack the URL to the detriment and damage of Intellisoft and South Carolina Center for Child Care Career Development.

**Failure to Return or Provide Access to Intellisoft Property**
**(Failure to Return Intellisoft Property)**

130. Under the Assignment Of Rights, Non-Disclosure, Non-Solicitation And Non-Competition Agreement, Estep assigned all his rights, title and interest in any such source codes to Intellisoft.

131. Under the Assignment Of Rights, Non-Disclosure, Non-Solicitation And Non-Competition Agreement, Estep agreed that any source codes were made as a work made for hire.

132. Under the Assignment Of Rights, Non-Disclosure, Non-Solicitation And Non-Competition Agreement, Estep is under an obligation to return company property upon request from Intellisoft.

GREENVILLE 316987v3

133. Intellisoft has asked that Estep return any and all software, including source codes, to Intellisoft multiple times.

134. Estep has refused.

135. Most recently, Estep was asked to return Intellisodft proper including the source code on July 2,1 2014.

136. Estep refused.

137. Estep has refused to return software, including source codes to Intellisoft, and his refusal has no basis in law or fact.

138. Intellisoft has no access to much of its source code and such access is being prevented by Estep.

139. Estep's refusal prevents Intellisoft from conducting business, preform customers' work and severely damages Intellisoft.

140. Estep is in possession of, but has refused to return the source code the software AirportICE, including version 7.2.0.3.

141. Estep is in possession of, but has refused to return the source code the software AirportICE-WebPortal, including version 1.0.0.

142. Estep is in possession of, but has refused to return the source code the software BioscryptiClassEnroll, including version 1.0.0.5.

143. Estep is in possession of, but has refused to return the source code the software ICE-STA-XLS Creator, including version 2.0.0.0.

144. Estep is in possession of, but has refused to return the source code the software ICEIrisID, including version 1.2.0.2.

145. Estep is in possession of, but has refused to return the source code the software ICEWARE, including version 6.5.3.9.

146. Estep is in possession of, but has refused to return the source code the software ICEWARE, including version 6.5.3.11.

147. Estep is in possession of, but has refused to return the source code the software ICEWARE Image Conversion Utility, including version 1.0.0.2.

148. Estep is in possession of, but has refused to return the source code the software ICEWARE ARS, including version 1.0.0.3.

149. Estep is in possession of, but has refused to return the source code the software InterafaceICE-Aircrew Pin Service, including version 1.0.0.4.

150. Estep is in possession of, but has refused to return the source code the software InterfaceICE AAAE-IET, including version 1.1.2.0.

151. Estep is in possession of, but has refused to return the source code the software InterfaceICE AAAE-STA, including version 2.0.1.4.

152. Estep is in possession of, but has refused to return the source code the software InterfaceICE AAAE-STA, including version 2.1.0.1.

153. Estep is in possession of, but has refused to return the source code the software InterfaceICE AAAE-STA, including version 2.2.0.7.

154. Estep is in possession of, but has refused to return the source code the software InterfaceICE-Aircrew Pin Service, including version 1.0.0.4.

155. Estep is in possession of, but has refused to return the source code the software InterfaceICE-Amag, including version 1.0.2.1.

156. Estep is in possession of, but has refused to return the source code the software InterfaceICE-Ccure 8, including version 1.1.2.

157. Estep is in possession of, but has refused to return the source code the software InterfaceICE-CCure 9, including version 1.1.4.

158. Estep is in possession of, but has refused to return the source code the software InterfaceICE-CCure 9, including version 1.1.5.

159. Estep is in possession of, but has refused to return the source code the software InterfaceICE-CCure 9000, including version 2.0.1.2.

160. Estep is in possession of, but has refused to return the source code the software InterfaceICE-Diamond, including version 1.0.0.7.

161. Estep is in possession of, but has refused to return the source code the software InterfaceICE-Edge, including version 1.1.0.1.

162. Estep is in possession of, but has refused to return the source code the software InterfaceICE-Identix, including version 1.0.0.6.

163. Estep is in possession of, but has refused to return the source code the software InterfaceICE-Lenel, including version 1.0.25.

164. Estep is in possession of, but has refused to return the source code the software InterfaceICE-TI, including version 1.2.0.14.

165. Estep is in possession of, but has refused to return the source code the software InterfaceICE-TI, including version 1.2.0.19.

166. Estep's refusal to return the source codes and provide access to the source codes irreparably harms Intellisoft and without injunctive relief, Intellisoft's injury will continue.

GREENVILLE 316987v3

## Unequitable Compensation in Favor of Estep
## (CFO and Fiduciary Duties and Breaches)

167. Under the Employment Agreement, Estep and Intellisoft agreed that "total compensation from Salary, Dividends, Benefits, Bonuses and other Company payments shall be equal to the remaining equal shareholder's total compensation.

168. Upon information and belief, Estep is or was a Certified Public Accountant.

169. Estep represented to Intellisoft that he was a CPA.  ("CPA")

170. In 2009, Estep was responsible for preparing and distributing 1099 and W2 forms.

171. In 2009, Estep was responsible for corporate tax filings with IRS for Intellisoft.

172. In 2009, Estep was provided a 1099 in the amount of $38,922.00.

173. In 2009, David Peeples ("Peeples"), a shareholder of Intellisoft, was provided a 1099 in the amount of $53,362.00.

174. In 2009 Estep received payments of $45,346.55.

175. In 2009 Estep was reimbursed for an amount of $25,027.05.

176. In 2009 Peeples received payments of $35.500.00.

177. In 2009, Peeples was reimbursed for an amount of $73.45.

178. In 2009, Estep receipts exceed Peeples receipts by $34,800.15.

179. In 2010, Estep was responsible for preparing and distributing 1099 and W2 forms.

180. In 2010, Estep was responsible for corporate tax filings with IRS for Intellisoft.

181. In 2010, Estep was provided a W2 in the amount of $48.371.34.

182. In 2010, Peeples was provided a W2 in the amount of $60,355.46.

183. In 2010 Estep received payments of $139,730.00.

184. In 2010 Estep was reimbursed for an amount of $55,1403.60.

185. In 2010 Peeples received payments of $186,000.00.

186. In 2010, Estep receipts exceed Peeples receipts by $8,870.60

187. In 2011, Estep was responsible for preparing and distributing 1099 and W2 forms.

188. In 2011, Estep was responsible for corporate tax filings with IRS for Intellisoft.

189. In 2011, Estep was provided a 1099 in the amount of $68,324,56.

190. In 2011, Estep was provided a W2 in the amount of $13,440.36.

191. In 2011, Peeples was provided a 1099 in the amount of $87,000.00.

192. In 2011, Peeples was provided a W2 in the amount of $26,104.22.

193. In 2011 Estep received payments of $61,520.03.

194. In 2010 Estep was reimbursed for an amount of $55,199.77.

195. In 2011 Peeples received payments of $50,000.00.

196. In 2011, Peeples was reimbursed for an amount of $801.68.

197. In 2011, Estep receipts exceed Peeples receipts by $65,918.12.

198. In 2012, Estep was responsible for preparing and distributing 1099 and W2 forms.

199. In 2012, Estep was responsible for corporate tax filings with IRS for Intellisoft.

200. In 2012, Estep was provided a 1099 in the amount of $188,015.22.

201. In 2012, Estep was provided a W2 in the amount of $15,000.00.

202. In 2012, Peeples was provided a 1099 in the amount of $112,496.71.

203. In 2012, Peeples was provided a W2 in the amount of $15,000.00.

204. In 2012 Estep received payments of $110,907.01.

205. In 2012 Estep was reimbursed for an amount of $109,035.97.

206. In 2012 Peeples received payments of $104,407.01.

207. In 2012, Estep receipts exceed Peeples receipts by $115,535.97.

208. In 2013, Estep was responsible for preparing and distributing 1099 and W2 forms.

GREENVILLE 316987v3

209. In 2013, Estep was provided a 1099 in the amount of $150,997.81.

210. In 2013, Peeples was provided a 1099 in the amount of $42,475.47.

211. In 2013, Peeples was provided a W2 in the amount of $20,000.

212. In 2013 Estep received payments of $65,359.49.

213. In 2013 Estep was reimbursed for an amount of $72,278.42.

214. In 2013 Peeples received payments of $35,342.92.

215. In 2013, Peeples was reimbursed for an amount of $500.19.

216. In 2013, Estep receipts exceed Peeples receipts by $101,794.80.

217. In the time period between 2009 and 2014, Estep's compensation exceeded that of Peeples by at least $340,110.31.

218. Estep owes to Intellisoft an amount in excess of $340,110.31.

**Improper Disclosure of Confidential Information and Trade Secrets**

219. Under the Assignment Of Rights, Non-Disclosure, Non-Solicitation And Non-Competition Agreement, Estep has an obligation to keep Proprietary Information confidential unless written consent is provided by Intellisoft.

220. Upon information and belief, Estep has been in communications with Wired Fox Technologies, Inc., a competitor of Intellisoft.

221. Upon information and belief, Estep has shared confidential information of Intellisoft with Mr. Jeff Yelton, President of Wired Fox Technologies.

222. Discloser of such information is in violation of Estep's contractual obligations with Intellisoft.

223. Upon information and belief, Estep has shared trade secrets of Intellisoft with Mr. Jeff Yelton, President of Wired Fox Technologies.

GREENVILLE 316987v3

224. Disclosure of trade secrets of Intellisoft is in violation of Estep's contractual obligations with Intellisoft.

225. Intellisoft has not provided written consent to Estep to disclose such information or trade secrets to third parties.

## Improper Competition with Intellisoft
## (Wired Fox Technologies)

226. A customer of Intellisoft informed Intellisoft that Estep was employed by Wired Fox Technologies, LLC, a competitor of Intellisoft.

227. Estep is not authorized to take secondary employment without permission of Intellisoft.

228. Intellisoft has not provided authorization or permission for Estep to take on secondary employment.

229. Estep's unauthorized secondary employment with a competitor is in breach of Estep's fiduciary duties and contractual obligations to Intellisoft.

## FIRST CAUSE OF ACTION
## Copyright Infringement

230. To the extent not inconsistent with the below allegations, Intellisoft realleges the allegations contained in paragraphs 1-229 as if fully repeated herein.

231. Intellisoft has filed copyright applications for the software listed above including, but not limited to Copyright Office Case Nos: 1-1644118830, 1-1646762274, 1-1646866043, 1-1646866133, 1-1646866599, 1-1646947712, 1-1646866227, 1-1646947839, 1-1646947795, 1-1649272731, 1-1649272885, 1-1649273027, 1-1649273251, 1-1649273293, 1-1649273366, 1-1649273519, 1-1649342723, 1-1649342816, 1-1649342888, 1-1649343152 and 1-1649343325.

232. Such copyright applications are pending in the United States Copyright Office.

233. Estep has in his possession unauthorized copies of the such software.

234. Estep's actions amount to copyright infringement.

235. Estep removed the copyright notification which previously stated the it was owned by Intellisoft, Inc. and replaced the notification with his name.

236. Estep removed the copyright notification with knowledge that the work is owned by Intellisoft.

237. Estep fraudulently and intentionally altered the copyright notification by, among other things, removing Intellisoft.

238. Intellisoft has been damaged and such damage is without a complete remedy in law and such damage will continue without a preliminary and permeant injunction.

## SECOND CAUSE OF ACTION
### Conversion

239. To the extent not inconsistent with the below allegations, Intellisoft re-alleges the allegations contained in paragraphs 1-238 as if fully repeated herein.

240. Intellisoft has ownership rights in the software described above.

241. Estep has intentionally interfered with these ownership rights of Intellisoft.

242. Intellisoft has been damaged by such actions.

243. Intellisoft is prevented from servicing its customer because Estep preventing access to the source codes in the possession, custody and control of Estep.

244. Estep has refused to release and transfer domain names that are registered in his name.

245. Estep has intentionally and improperly kept these domain names in his name personally to try to create leverage over Intellisoft and its clients.

246. Intellisoft has been damaged and such damage is without a complete remedy in law and such damage will continue without a preliminary and permeant injunction.

### THIRD CAUSE OF ACTION
### Breach of Employment Agreement

247. To the extent not inconsistent with the below allegations, Intellisoft realleges the allegations contained in paragraphs 1-246 as if fully repeated herein.

248. Estep has breached his contractual obligation to Intellisoft by disclosing confidential information without written authorization to third parties.

249. Estep has breached his contractual obligation to Intellisoft by disclosing trade secrets without written authorization to third parties.

250. Estep has breached his contractual obligation to Intellisoft by failing to return source code to Intellisoft.

251. Estep has breached his contractual obligation to Intellisoft by failing to provide Intellisoft access to its source code.

252. Estep has breached his contractual obligation to Intellisoft by taking unauthorized secondary employment.

253. Estep has breached his contractual obligation to Intellisoft by receiving reimbursement for expenses that are in fact of a personal and non-business nature.

254. Upon information and belief, Estep has breached his contractual obligation to Intellisoft by being reimbursed for travel expense to the Ukraine seeking a foreign national paramour.

255. Upon information and belief, Estep has breached his contractual obligation to Intellisoft by being reimbursed for legal fees for an immigration attorney seeking to bring his foreign national paramour to the United States.

256. Upon information and belief, Estep has breached his contractual obligation to Intellisoft by being reimbursed for firearm and firearm accessories that are personal purchase.

257. Upon information and belief, Estep has breached his contractual obligation to Intellisoft by being reimbursed for gifts purchased at Victoria Secrets.

258. Upon information and belief, Estep has breached his contractual obligation to Intellisoft by being reimbursed for gifts purchased at Helzberg Diamonds.

259. Estep's actions are willful and with knowledge of Intellisoft's rights.

260. Intellisoft is entitled to contractual damages as stated above.

261. Intellisoft has been damaged and such damage is without a complete remedy in law and such damage will continue without a preliminary and permeant injunction.

**FOURTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**

262. To the extent not inconsistent with the below allegations, Intellisoft re-alleges the allegations contained in paragraphs 1-261 as if fully repeated herein.

263. Estep had a fiduciary duty to Intellisoft as the Chief Operating Officer and Chief Financial Officer.

264. Estep breached this duty by reimbursing himself for non-business related expenses.

265. Estep breached this duty by reimbursing himself for personal expenses.

266. Estep breached this duty by failing to provide access to the source codes to Intellisoft.

267. Estep breached this duty by competing with Intellisoft while he was an employee.

268. Intellisoft has been damaged and such damage is without a complete remedy in law and such damage will continue without a preliminary and permeant injunction.

**FIFTH CAUSE OF ACTION**
**Tortious Interference with Existing Contractual Relations**

269. To the extent not inconsistent with the below allegations, Intellisoft re-alleges the allegations contained in paragraphs 1-268 as if fully repeated herein.

270. Intellisoft has several contracts with client which require Inteillisoft to modify and maintain software applications.

271. Modification of the software require access to the source code and development environment.

272. Estep is aware of these contracts.

273. Estep, by withholding access to and the source code and development environment, is preventing Intellisoft from honoring its contractual obligation and therefore breaching its agreements.

274. Intellisoft owner the source code and the copyrights into the source code.

275. Estep is intentionally withholding the source code and development environment to improperly gain leverage over Intellisoft.

276. Estep is intentionally withholding the source code and development environment without justification.

277. Intellisoft has been damage by Esteps' improper action including its inability to provide contracted services to its clients.

278. Intellisoft has been damage by Esteps' improper action including losing clients to competitors.

## SIXTH CAUSE OF ACTION
### Tortious Interference with Prospective Contractual Relations

279. To the extent not inconsistent with the below allegations, Intellisoft re-alleges the allegations contained in paragraphs 1-278 as if fully repeated herein.

280. Intellisoft has several contracts with existing clients.

281. Intellisoft has the opportunity to preform further service and additional contractual relationships with its existing and prospective customers.

GREENVILLE 316987v3

282. Modifications to existing software are part of the opportunities that Intellisoft has with existing and protective customers.

283. Intellisoft realizes revenues by preformed these modifications.

284. Modification of the software require access to the source code and development environment.

285. Estep is aware of these contracts and opperutnities.

286. Estep, by withholding access to and the source code and development environment, is preventing Intellisoft from benefiting from these prospective contractual relationships.

287. Intellisoft owner the source code and the copyrights into the source code.

288. Estep is intentionally withholding the source code and development environment to improperly gain leverage over Intellisoft.

289. Estep is intentionally withholding the source code and development environment without justification.

290. Intellisoft has been damage by Esteps' improper action including its inability to provide additional services to its clients.

291. Intellisoft has been damage by Esteps' improper action including losing clients to competitors.

### SEVENTH CAUSE OF ACTION
### Negligence and Gross Negligence

292. To the extent not inconsistent with the below allegations, Intellisoft re-alleges the allegations contained in paragraphs 1-291 as if fully repeated herein.

293. Estep owed a duty of care to Intellisoft to, among other things, to act in good faith and refrain from receiving persona benefit at the expense of the Intellisoft.

294. Estep breached these duties through the actions and omissions described herein.

295. Estep breach caused damages to Intellisoft that include loss of funds.

296. Estep's actions and omissions were intentional, and with a conscious failure to perform the duties owed to the Intellisoft.

297. Estep failed even to exercise the slightest care in exercising his duty to Intellisoft.

298. Estep was and is indifferent to the consequences of his actions and the damage to Intellisoft.

299. Esteps actions are willful, wanton, reckless and in complete disregard to his duty owed Intellisoft.


WHEREFORE, Intellisoft hereby requests and prays that this Court and/or the trier of fact award the following relief:

A.      A determination that Estep has breached his contractual obligations with Intellisoft;

B.      Estep reimburse and make whole Intellisoft for the monies improperly reimbursed;

C.      Estep return any and all property to Intellisoft;

D.      Estep return any and all source codes including development environments to Intellisoft;

E.      Estep transfer any and all domain names related to the business of Intellisoft to Intellisoft;

F.      An award of damages against Estep in an amount in excess of $400,000 to be determined by the trier of fact;

G.      An award of punitive and exemplary damages;

GREENVILLE 316987v3

H.    An order compelling Estep to honor his contractual obligations; and,

I.    For such other relief as this Court deems just and proper.


                                    Respectfully submitted,

                                    McNAIR LAW FIRM, P. A.

                                    /s/Douglas W. Kim
                                    Douglas W. Kim (Fed ID #9004)
                                    Reginald Gay  (Fed ID #4820)
                                    P.O. Box 10827
                                    Greenville, SC 29603
                                    Telephone:  864-232-4261
Date: August 7, 2014                Fax: 864-232-4437
                                    *Attorneys for Plaintiff*

GREENVILLE 316987v3