# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

| | |
|---|---|
| INTELLISOFT, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHRISTOPHER L. ESTEP (a/k/a CHRIS STONE), <br><br> Defendant. | Case No: <br><br> **EXHIBIT B** <br> **to the COMPLAINT** |

GREENVILLE 317126v1

# INTELLISOFT, INC.

ASSIGNMENT OF RIGHTS, NON-DISCLOSURE, NON-SOLICITATION
AND NON-COMPETITION AGREEMENT

In return for my employment by Intellisoft, Inc. ("Company"), I acknowledge and agree that:

1. **Proprietary Information Defined.** My employment creates a relationship of confidence and trust between Company and me. In the course of my employment with the Company, I will be privy to certain information having commercial value to the Company and which the Company has either taken efforts to protect from disclosure (Trade Secrets) or has taken steps to protect while disclosing (Copyrights, Patents and Trade or Service Marks) – together, this information is referred to herein as "Proprietary Information." By way of illustration, but not limitation, Proprietary Information includes any and all technical and non-technical information, techniques, sketches, drawings, models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future and proposed products and services of Company, financial information, procurement requirements, purchasing information, customer lists, business forecasts, and sales and merchandising and marketing plans.

2. **Ownership and Nondisclosure of Proprietary Information.** All Proprietary Information is the sole property of Company. I hereby do and will assign to Company all rights, title and interest I may have or may acquire in the Proprietary Information. At all times, both during my employment by Company and after termination of such employment, I will keep in confidence and trust all Proprietary Information, and I will not use or disclose any Proprietary Information or anything directly relating to Proprietary Information without the written consent of Company, except as may be necessary in the ordinary course of performing my duties as an employee of Company.

3. **Innovations Defined.** As used in this Agreement, the term "innovations" means all processes, machines, manufactures, compositions of matter, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyrights laws), moral rights, mask works, trademarks, trade names, trade dress, trade secrets, know-how, ideas (whether or not protectable under trademark or trade secret laws), and all other subject mater protectable under patent, copyright, trademark, trade secret or other laws, and includes without limitation all new or useful art, combinations discoveries, formulae, manufacturing techniques, technical developments discoveries, artwork, software, and designs. Innovations include "inventions," which is defined to mean any inventions protected under patent laws.

4. **Disclosure of Prior Innovations.** I have identified on Exhibit A ("Prior Innovations") attached hereto all Innovations, applicable to the business of Company or relating in any way

# INTELLISOFT, INC.

to Company's business or demonstrably anticipated research and development or business, which were conceived, reduced to practice, created, derived, developed, or made by me prior to my employment with Company (collectively, the "Prior Innovations"), and I represent that such list is complete. I represent that I have no rights in any such Innovations other than those Prior Innovations specified in Exhibit A. If there is no such list on Exhibit A, I represent that I have neither conceived, reduced to practice, created, derived, developed nor made any such Prior Innovations at the time of signing this Agreement.

5. <u>Assignment of Innovations; License of Prior Innovations</u>. I agree that all work done by me during the period of my employment with the Company shall be Work for Hire and to the maximum extent permitted by law the Company, and not me, shall be deemed the author or inventor of such work. Where my work results in my obtaining an intellectual property right in any of my work, I hereby assign to Company or Company's designee my entire right, title, and interest in and to that work and any associated intellectual property rights to such work. To the extent any of the rights, title and interest in and to my work cannot be assigned by me to Company, I hereby grant to Company an exclusive, royalty-free, transferable, irrevocable, worldwide license to practice such non-assignable rights, title and interest. I furthermore hereby grant to Company a royalty free, irrevocable, worldwide license to practice all applicable patent, copyright, trade secret and other intellectual property rights relating to any Prior Innovations which I incorporate, or permit to be incorporated, in any Company Innovations. Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, any Prior Innovations in any Company Innovations without Company's prior written consent.

6. <u>Future Innovations</u>. I recognize that Innovations or Proprietary Information relating to my activities while working for Company and conceived, reduced to practice, created, derived, developed, or made by me, alone or with others, within three (3)) months after termination of my employment may have been conceived, reduced to practice, created, derived, developed, or made, as applicable, in significant part while employed by Company. Accordingly, I agree that such Innovations and Proprietary Information shall be presumed to have been conceived, reduced to practice, created, derived, developed, or made, as applicable, during my employment with Company and are to be promptly assigned to Company unless and until I have established the contrary by written evidence satisfying the clear and convincing standard of proof.

7. <u>Cooperation in Perfecting Rights to Proprietary Information and Innovations</u>. I agree to perform, during and after my employment, all acts deemed necessary or desirable by Company to permit and assist Company, at Company's expense, in obtaining and enforcing the full benefit of this Agreement.



# INTELLISOFT, INC.

8. <u>Return of Company Property</u>. I acknowledge that all materials (including, without limitation, documents, drawings, models, apparatus, sketches, designs, lists, and all other tangible media of expression) furnished to me by Company shall remain the property of Company. On termination of my employment with Company for whatever reason, or at the request of Company before termination, I agree to promptly deliver to Company all records, files, computer disks, memoranda, documents, lists, materials and other information regarding or containing any confidential or Proprietary Information, including all copies, reproductions, summaries or excerpts thereof, then in my possession or control, whether prepared by me or others. I also agree to promptly return, upon termination or at any time upon Company's request, any and all Company property issued to me, including but no limited to computers, facsimile transmission equipment, cellular phones, keys and credit cards. I further agree that should I discover any Company property or Proprietary Information in my possession after my termination and departure from Company, I agree to return it promptly to Company without retaining copies or excerpts of any kind.

9. <u>Restrictive Covenants</u>.

    a. <u>Non-solicitation of Customers or Prospects</u>. I acknowledge that information about Company's customers is confidential and constitutes trade secrets. Accordingly, I agree that during my employment and for a period of one (1) year after my employment ends, I will not, either directly or indirectly, separately or in association with others, interfere with, impair, disrupt or damage Company's relationship with any of its customers or customer prospects by soliciting or encouraging others to solicit any of them for the purpose or diverting or taking away business from Company.

    b. <u>Non-solicitation of Company's Employees</u>. Because I recognize that solicitation of Company's employees will interfere with, impair, disrupt or damage Company's business, I agree that during my employment and for a period of one (1) year after my employment ends, I will not, either directly or indirectly, separately or in association with others, interfere with, impair, disrupt or damage Company's business by soliciting any of Company's employees or causing others to solicit or encourage any of Company's employees to discontinue their employment with Company.

    c. <u>Covenant Not to Compete</u>. In recognition of the substantial time, money and effort expended by Company in the development of its confidential and proprietary information; the fact that I will have access to and be personally entrusted with such confidential and proprietary information during my employment with Company; the high degree of competition in the field Company has chosen to engage in; the special knowledge and expertise that I may develop as a result of my employment with the Company; and the nature of Company's business, I agree that during my employment

# INTELLISOFT, INC.

and for a period of one (1) year following the termination of my employment, I shall not engage, directly or indirectly through any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or other entity (collectively "Person") or contractual arrangement, in any business any where in North America ("Geographic Restriction") that manufactures, produces or supplies products or services of the kind manufactured, produced or supplied by Company ("Competes"), or directly or indirectly through any Person or contractual arrangement, perform management, executive or supervisory functions with respect to, operate, join, control, render financial assistance to, receive any economic benefit from, exert any influence upon, or participate in or allow any of its officers or employees to be connected as an officer, employee, partners, member, stockholder, consultant, or otherwise with, any business or Person that Competes in whole or in part with the business of Company. It is recognized by the parties that the Company conducts and is expected to continue to conduct its business throughout North America and that more narrow geographical limitations of any nature on this non-competition covenant are therefore not appropriate. I acknowledge that this covenant not to compete is limited to the types of activities and services I provided in my employment with Company. As such, I acknowledge and agree that these restrictions allow me an adequate number and variety of employment alternatives, based on my varied skills and abilities. I represent that I am willing and able to compete in other employment not prohibited by this Agreement. I represent and agree that the restrictions on competition, as to time, geographic area, and scope of activity are reasonable, do not impose a greater restraint than in necessary to protect the goodwill and business interest of the Company, and are not unduly burdensome to me. If a court of competent jurisdiction determines that the Geographic Restriction set forth above is unenforceable under applicable law because it is too broad, then the Geographic Restriction shall be amended and narrowed to include only the United States. In the event a court determines that any other restrictions regarding time or scope of activity under this Section are unenforceable, it is the intent of the parties to this Agreement that the restrictions shall not be terminated but shall be reformed and modified to the extent required to render them valid and enforceable.

10. <u>No Violation of Rights of Third Parties</u>. I warrant that my performance of all other terms of this Agreement and my employment with Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me prior to my employment with Company. I agree not to disclose to Company, or induce Company to use, any confidential or proprietary information or material belonging to any previous employers or others. I warrant that I am not a party to any other agreement that will interfere with my full compliance with this Agreement or any other agreement that I may have with Company. I further agree not to enter into any agreement, whether written or oral,

# INTELLISOFT, INC.

in conflict with the provisions of this Agreement and any other agreement that I may have with Company.

11. <u>Survival</u>. It is the intent of the parties that these provisions inure to the benefit of Company and its beneficiaries, assigns and/or successors in interest, whether such successors ascend to such interest by way or merger, stock purchase or asset purchase. In the event Company is acquired through an asset purchase, these covenants shall be deemed to be assigned as part of such purchase. The covenants shall survive termination of my employment with Company, whether such termination was for cause, without cause, voluntary, involuntary or due to disability, for the entire term of the covenants.

12. <u>Injunctive Relief</u>. I acknowledge that a breach of any of the promises or agreements contained herein will result in irreparable injury to Company and agree that in the event of any such breach; Company shall be entitled to seek temporary, preliminary injunction relief without the necessity of proving actual damages.

13. <u>Governing Law, Arbitration</u>. This Agreement will be governed by and construed in accordance with the laws of the United States and the State of South Carolina. Each party consents to the jurisdiction and venue of the state courts in Spartanburg, South Carolina, if applicable, in any action, suit, or proceeding arising out of or relating to this Agreement.

14. <u>Severability</u>. If any provision of this Agreement is held by a court of law or arbitrator to be illegal, invalid or unenforceable, (i) that provision shall be deemed amended to achieve as nearly as possible the same economic effect as the original provision, and (ii) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

15. <u>Attorneys' Fees</u>. In the event that any dispute arising under this Agreement should result in litigation or arbitration, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable fees, costs and expenses, including without limitation, reasonable attorneys' fees and expenses.

16. <u>Waiver; Amendment; Modification</u>. The waiver by me or Company of a term or provision of this Agreement, or of a breach of any provision of this Agreement by Company or me shall not be effective unless such waiver is in writing signed by the other party. No waiver by Company or me to, or consent by Company or me to, a breach by the other party, will constitute a waiver of, consent to or excuse of any other or subsequent breach by the other party. This Agreement may be amended or modified only with the written consent of both me and Company. No oral wavier, amendment or modification shall be effective under any circumstances whatsoever.

# INTELLISOFT, INC.

I certify and acknowledge that I have carefully read all of the provisions of this Assignment of Rights, Non-Disclosure, Non-Solicitation and Non-Competition Agreement and that I understand and willfully and faithfully comply with such provisions.

INTELLISOFT, INC.                                  EMPLOYEE

By: _____CLE_____                            By: _____
Name:   Chris L. Estep                             Name:  David Peeples
Title:  President

# INTELLISOFT, INC.

## EXHIBIT A

# INTELLISOFT, INC.

ASSIGNMENT OF RIGHTS, NON-DISCLOSURE, NON-SOLICITATION
AND NON-COMPETITION AGREEMENT

In return for my employment by Intellisoft, Inc. ("Company"), I acknowledge and agree that:

1. <u>Proprietary Information Defined</u>.  My employment creates a relationship of confidence and trust between Company and me.  In the course of my employment with the Company, I will be privy to certain information having commercial value to the Company and which the Company has either taken efforts to protect from disclosure (Trade Secrets) or has taken steps to protect while disclosing (Copyrights, Patents and Trade or Service Marks) – together, this information is referred to herein as "Proprietary Information."  By way of illustration, but not limitation, Proprietary Information includes any and all technical and non-technical information, techniques, sketches, drawings, models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future and proposed products and services of Company, financial information, procurement requirements, purchasing information, customer lists, business forecasts, and sales and merchandising and marketing plans.

2. <u>Ownership and Nondisclosure of Proprietary Information</u>.  All Proprietary Information is the sole property of Company.  I hereby do and will assign to Company all rights, title and interest I may have or may acquire in the Proprietary Information.  At all times, both during my employment by Company and after termination of such employment, I will keep in confidence and trust all Proprietary Information, and I will not use or disclose any Proprietary Information or anything directly relating to Proprietary Information without the written consent of Company, except as may be necessary in the ordinary course of performing my duties as an employee of Company.

3. <u>Innovations Defined</u>.  As used in this Agreement, the term "innovations" means all processes, machines, manufactures, compositions of matter, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyrights laws), moral rights, mask works, trademarks, trade names, trade dress, trade secrets, know-how, ideas (whether or not protectable under trademark or trade secret laws), and all other subject mater protectable under patent, copyright, trademark, trade secret or other laws, and includes without limitation all new or useful art, combinations discoveries, formulae, manufacturing techniques, technical developments discoveries, artwork, software, and designs. Innovations include "inventions," which is defined to mean any inventions protected under patent laws.

4. <u>Disclosure of Prior Innovations</u>.  I have identified on Exhibit A ("Prior Innovations") attached hereto all Innovations, applicable to the business of Company or relating in any way



# INTELLISOFT, INC.

to Company's business or demonstrably anticipated research and development or business, which were conceived, reduced to practice, created, derived, developed, or made by me prior to my employment with Company (collectively, the "Prior Innovations"), and I represent that such list is complete. I represent that I have no rights in any such Innovations other than those Prior Innovations specified in Exhibit A. If there is no such list on Exhibit A, I represent that I have neither conceived, reduced to practice, created, derived, developed nor made any such Prior Innovations at the time of signing this Agreement.

5. <u>Assignment of Innovations; License of Prior Innovations</u>. I agree that all work done by me during the period of my employment with the Company shall be Work for Hire and to the maximum extent permitted by law the Company, and not me, shall be deemed the author or inventor of such work. Where my work results in my obtaining an intellectual property right in any of my work, I hereby assign to Company or Company's designee my entire right, title, and interest in and to that work and any associated intellectual property rights to such work. To the extent any of the rights, title and interest in and to my work cannot be assigned by me to Company, I hereby grant to Company an exclusive, royalty-free, transferable, irrevocable, worldwide license to practice such non-assignable rights, title and interest. I furthermore hereby grant to Company a royalty free, irrevocable, worldwide license to practice all applicable patent, copyright, trade secret and other intellectual property rights relating to any Prior Innovations which I incorporate, or permit to be incorporated, in any Company Innovations. Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, any Prior Innovations in any Company Innovations without Company's prior written consent.

6. <u>Future Innovations</u>. I recognize that Innovations or Proprietary Information relating to my activities while working for Company and conceived, reduced to practice, created, derived, developed, or made by me, alone or with others, within three (3)) months after termination of my employment may have been conceived, reduced to practice, created, derived, developed, or made, as applicable, in significant part while employed by Company. Accordingly, I agree that such Innovations and Proprietary Information shall be presumed to have been conceived, reduced to practice, created, derived, developed, or made, as applicable, during my employment with Company and are to be promptly assigned to Company unless and until I have established the contrary by written evidence satisfying the clear and convincing standard of proof.

7. <u>Cooperation in Perfecting Rights to Proprietary Information and Innovations</u>. I agree to perform, during and after my employment, all acts deemed necessary or desirable by Company to permit and assist Company, at Company's expense, in obtaining and enforcing the full benefit of this Agreement.

# INTELLISOFT, INC.

8. <u>Return of Company Property</u>. I acknowledge that all materials (including, without limitation, documents, drawings, models, apparatus, sketches, designs, lists, and all other tangible media of expression) furnished to me by Company shall remain the property of Company. On termination of my employment with Company for whatever reason, or at the request of Company before termination, I agree to promptly deliver to Company all records, files, computer disks, memoranda, documents, lists, materials and other information regarding or containing any confidential or Proprietary Information, including all copies, reproductions, summaries or excerpts thereof, then in my possession or control, whether prepared by me or others. I also agree to promptly return, upon termination or at any time upon Company's request, any and all Company property issued to me, including but no limited to computers, facsimile transmission equipment, cellular phones, keys and credit cards. I further agree that should I discover any Company property or Proprietary Information in my possession after my termination and departure from Company, I agree to return it promptly to Company without retaining copies or excerpts of any kind.

9. <u>Restrictive Covenants</u>.

   a. <u>Non-solicitation of Customers or Prospects</u>. I acknowledge that information about Company's customers is confidential and constitutes trade secrets. Accordingly, I agree that during my employment and for a period of one (1) year after my employment ends, I will not, either directly or indirectly, separately or in association with others, interfere with, impair, disrupt or damage Company's relationship with any of its customers or customer prospects by soliciting or encouraging others to solicit any of them for the purpose or diverting or taking away business from Company.

   b. <u>Non-solicitation of Company's Employees</u>. Because I recognize that solicitation of Company's employees will interfere with, impair, disrupt or damage Company's business, I agree that during my employment and for a period of one (1) year after my employment ends, I will not, either directly or indirectly, separately or in association with others, interfere with, impair, disrupt or damage Company's business by soliciting any of Company's employees or causing others to solicit or encourage any of Company's employees to discontinue their employment with Company.

   c. <u>Covenant Not to Compete</u>. In recognition of the substantial time, money and effort expended by Company in the development of its confidential and proprietary information; the fact that I will have access to and be personally entrusted with such confidential and proprietary information during my employment with Company; the high degree of competition in the field Company has chosen to engage in; the special knowledge and expertise that I may develop as a result of my employment with the Company; and the nature of Company's business, I agree that during my employment

# INTELLISOFT, INC.

and for a period of one (1) year following the termination of my employment, I shall not engage, directly or indirectly through any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or other entity (collectively "Person") or contractual arrangement, in any business any where in North America ("Geographic Restriction") that manufactures, produces or supplies products or services of the kind manufactured, produced or supplied by Company ("Competes"), or directly or indirectly through any Person or contractual arrangement, perform management, executive or supervisory functions with respect to, operate, join, control, render financial assistance to, receive any economic benefit from, exert any influence upon, or participate in or allow any of its officers or employees to be connected as an officer, employee, partners, member, stockholder, consultant, or otherwise with, any business or Person that Competes in whole or in part with the business of Company. It is recognized by the parties that the Company conducts and is expected to continue to conduct its business throughout North America and that more narrow geographical limitations of any nature on this non-competition covenant are therefore not appropriate. I acknowledge that this covenant not to compete is limited to the types of activities and services I provided in my employment with Company. As such, I acknowledge and agree that these restrictions allow me an adequate number and variety of employment alternatives, based on my varied skills and abilities. I represent that I am willing and able to compete in other employment not prohibited by this Agreement. I represent and agree that the restrictions on competition, as to time, geographic area, and scope of activity are reasonable, do not impose a greater restraint than in necessary to protect the goodwill and business interest of the Company, and are not unduly burdensome to me. If a court of competent jurisdiction determines that the Geographic Restriction set forth above is unenforceable under applicable law because it is too broad, then the Geographic Restriction shall be amended and narrowed to include only the United States. In the event a court determines that any other restrictions regarding time or scope of activity under this Section are unenforceable, it is the intent of the parties to this Agreement that the restrictions shall not be terminated but shall be reformed and modified to the extent required to render them valid and enforceable.

10. <u>No Violation of Rights of Third Parties</u>. I warrant that my performance of all other terms of this Agreement and my employment with Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me prior to my employment with Company. I agree not to disclose to Company, or induce Company to use, any confidential or proprietary information or material belonging to any previous employers or others. I warrant that I am not a party to any other agreement that will interfere with my full compliance with this Agreement or any other agreement that I may have with Company. I further agree not to enter into any agreement, whether written or oral,



# INTELLISOFT, INC.

in conflict with the provisions of this Agreement and any other agreement that I may have with Company.

11. <u>Survival</u>. It is the intent of the parties that these provisions inure to the benefit of Company and its beneficiaries, assigns and/or successors in interest, whether such successors ascend to such interest by way or merger, stock purchase or asset purchase. In the event Company is acquired through an asset purchase, these covenants shall be deemed to be assigned as part of such purchase. The covenants shall survive termination of my employment with Company, whether such termination was for cause, without cause, voluntary, involuntary or due to disability, for the entire term of the covenants.

12. <u>Injunctive Relief</u>. I acknowledge that a breach of any of the promises or agreements contained herein will result in irreparable injury to Company and agree that in the event of any such breach; Company shall be entitled to seek temporary, preliminary injunction relief without the necessity of proving actual damages.

13. <u>Governing Law, Arbitration</u>. This Agreement will be governed by and construed in accordance with the laws of the United States and the State of South Carolina. Each party consents to the jurisdiction and venue of the state courts in Spartanburg, South Carolina, if applicable, in any action, suit, or proceeding arising out of or relating to this Agreement.

14. <u>Severability</u>. If any provision of this Agreement is held by a court of law or arbitrator to be illegal, invalid or unenforceable, (i) that provision shall be deemed amended to achieve as nearly as possible the same economic effect as the original provision, and (ii) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

15. <u>Attorneys' Fees</u>. In the event that any dispute arising under this Agreement should result in litigation or arbitration, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable fees, costs and expenses, including without limitation, reasonable attorneys' fees and expenses.

16. <u>Waiver; Amendment; Modification</u>. The waiver by me or Company of a term or provision of this Agreement, or of a breach of any provision of this Agreement by Company or me shall not be effective unless such waiver is in writing signed by the other party. No waiver by Company or me to, or consent by Company or me to, a breach by the other party, will constitute a waiver of, consent to or excuse of any other or subsequent breach by the other party. This Agreement may be amended or modified only with the written consent of both me and Company. No oral wavier, amendment or modification shall be effective under any circumstances whatsoever.



7:14-cv-03170-BHH    Date Filed 08/07/14    Entry Number 1-2    Page 13 of 15

# INTELLISOFT, INC.

I certify and acknowledge that I have carefully read all of the provisions of this Assignment of Rights, Non-Disclosure, Non-Solicitation and Non-Competition Agreement and that I understand and willfully and faithfully comply with such provisions.

INTELLISOFT, INC.                                      EMPLOYEE

By: _____          By: _____
Name:   David Peeples                                  Name:  Chris Estep
Title:   Vice-President

# INTELLISOFT, INC.

EXHIBIT A

